## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| DISH NETWORK L.L.C., and <br> SLING TV L.L.C., <br>             Plaintiffs, <br><br> v. <br><br> JOHN GWAKA MAGEMBE and JOYCE BERRY, individually and collectively d/b/a BEAST TV and CHANNELS4CHEAP <br><br>             Defendants. | Case No. 4:23-cv-1136 |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs DISH Network L.L.C. ("DISH") and Sling TV L.L.C. ("Sling" and collectively "Plaintiffs") file this action against Defendants John Gwaka Magembe ("Magembe") and Joyce Berry ("Berry"), individually and collectively d/b/a Beast TV and Channels4Cheap (collectively "Defendants") for violations of the anti-trafficking provisions of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 and the Federal Communications Act ("FCA"), 47 U.S.C. § 605. Defendants provide and profit from the sale of an illicit streaming service known as Beast TV a/k/a Channels4Cheap that captures and retransmits Plaintiffs' television programming, without authorization, by circumventing Plaintiffs' security measures.

### PARTIES

1. Plaintiff DISH Network L.L.C. is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

2. Plaintiff Sling TV L.L.C. is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

3. Defendant John Gwaka Magembe is an individual residing in Arlington, Texas.

1

4. Defendant Joyce Berry is an individual residing in Arlington, Texas.

## JURISDICTION & VENUE

5. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims for violations of 17 U.S.C. § 1201.

6. Defendants are subject to personal jurisdiction in this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) because Defendants reside in Texas and, through their wrongful conduct identified herein, Defendants purposefully directed their conduct towards and purposefully availed themselves of the privileges of conducting business in Texas, causing injury to Plaintiffs in Texas.

7. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants reside in this judicial district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

## PLAINTIFFS' SATELLITE AND INTERNET TELEVISION PLATFORM

8. DISH delivers television programming to millions of subscribers nationwide using a direct broadcast satellite system ("DISH Programming"). DISH's satellite transmissions of DISH Programming are secured using a conditional access system ("CAS") provided by NagraStar LLC, a joint venture entity of DISH. The CAS uses a key-based encryption and decryption process to make DISH Programming accessible to only authorized DISH subscribers that purchased access to that DISH Programming and restricts unauthorized access to, copying, and retransmission of DISH Programming.

9. DISH and Sling also provide television programming to millions of authorized, fee-paying subscribers of their Sling TV and DISH Anywhere services in the Unites States using the internet ("Plaintiffs' Programming"). Plaintiffs acquire the distribution rights to provide the both DISH and Plaintiffs' Programming pursuant to license agreements between DISH and various

rights holders. The programming consists of live channels and on demand content and is subject to copyright protections. Plaintiffs' Programming, whether intended for Sling TV subscribers or DISH Anywhere subscribers, are transmitted over the internet using the same Sling streaming platform.

10. Plaintiffs implement digital rights management ("DRM") technology, with the rights holders' consent, to protect the Plaintiffs' Programming from unauthorized access, copying and retransmission. Each DRM technology uses a key-based subscriber authentication and encryption-decryption process to make Plaintiffs' Programming accessible to only authorized subscribers that purchase access to the programming from Plaintiffs and restricts unauthorized access to, copying, and retransmission of the programming.

### DEFENDANTS ARE TRAFFICKING IN DEVICES AND SERVICES RELATED TO AN INFRINGING REBROADCASTING SCHEME[1]

11. Defendants are trafficking in the Beast TV internet streaming television service a/k/a Channels4Cheap ("Service") through their websites located at www.channels4cheap.com ("C4C Website") and its sister website www.purchase-iptv.com. Undercover purchases of the Service made from the C4C Website show that Defendants are operating the C4C Website.

12. Defendants profit from the Rebroadcasting Scheme through the sale of device codes that are designed and produced to enable a set-top box or other internet-enabled device to access servers used to retransmit DISH Programming and Plaintiffs' Programming on the Service (a "Device Code"). A valid Device Code is required to access the Service.

---

[1] The allegations made by Plaintiffs concerning the wrongful conduct of Defendants are based on the investigation completed to date, and with the reasonable belief that further investigation and discovery in this action will lead to additional factual support. Therefore, Plaintiffs reserve the right to supplement or amend their claims and the basis for those claims, with leave of court if needed, as additional investigation and discovery is conducted.

13. Defendants sell Device Codes to the Service on the C4C Website for $2 for a forty-eight hour trial; $15 for one month; $40 for three months; $70 for six months; and $120 for twelve months, depending on the option selected by the user.



*Excerpt from www. channels4cheap.com*

14. Defendants advertise the Service on the Websites as offering over 4,000 live channels, sports packages from around the world (including NFL, NBA, MLB, NHL, and UFC), and "Free PPV Events". Defendants tout having over 400+ USA channels, 150+ Canada channels, 100+ Latino channels, and 100+ Indian channels.

//

//

//

//

//

//



15. Magembe was listed at one point as the 10th top reseller of Device Codes to the Service.

16. The DISH Programming retransmitted on the Service originated from DISH's satellite communications, while Plaintiffs' Programming retransmitted on the Service is received

5

from Plaintiffs' internet communications. The DISH Programming on the Service includes the following channels by way of example: Willow, Pasiones, and Cinelatino ("DISH Channels"). Plaintiffs' Programming on the Service includes the following channels by way of example: Cartoon Network and Adult Swim, The Cowboy Channel, Lifetime Movie Network, Centroamerica TV, Noticias Univision 24/7, and the NBA channels for all thirty (30) NBA teams ("Plaintiffs' Channels").

17. DISH's Channels were transmitted without authorization to users that purchased Device Codes to the Service from Defendants. Watermarks inserted into DISH's satellite communications for purposes of analyzing the Service, were detected when testing the DISH Channels, confirming DISH's satellite communications are the source of the DISH Channels retransmitted on the Service.

18. Plaintiffs' Channels were transmitted without authorization to users that purchased the Service from Defendants. Identifiers that are unique to Plaintiffs' internet transmissions of the Plaintiffs' Channels were detected when conducting a technical analysis of the corresponding channels on the Service, thereby confirming that channels transmitted on the Service originated from Plaintiffs. Periodic monitoring conducted on a sampling of channels on the Service showed numerous instances where Plaintiffs' Channels were being retransmitted to users of the Service without Plaintiffs' authorization.

19. Plaintiffs' Channels are retransmitted to users of the Service by circumventing the Widevine DRM. The Widevine DRM controls access to Plaintiffs' Channels by requiring Plaintiffs' subscriber to present a valid digital authentication key and license request to Sling's Widevine DRM server to obtain the channel decryption key necessary to unlock a specific Channel. The channel decryption key is provided to Plaintiffs' subscriber in an encrypted

communication and upon receipt is not exposed to the subscriber but rather is secured in the content decryption module of the subscriber's Widevine supported device. In addition, the Widevine DRM protects against copying of Plaintiffs' Channels in the ordinary course of its operation by requiring that the encrypted audio-visual segments that make up a Channel are unlocked using the channel decryption key and complied to form the Channel within the confines of the content decryption module, such that Plaintiffs' subscribers can only view the Channel and not retransmit the Channel.

20.     The Widevine DRM and the protection it affords is circumvented using a specially developed computer program that emulates the behavior of a reverse engineered hardware device. The computer program tricks Sling's Widevine DRM server to grant access and provide a channel decryption key by making the server believe the request originated from a legitimate Widevine supported device that would keep the channel decryption key secured (though in reality the request came from the computer program mimicking the reverse engineered hardware). The computer program uses the channel decryption key to unlock the encrypted audio-visual segments that make up the Channel and then compiles the segments to form an unencrypted Channel that is capable of being copied and retransmitted (as opposed to being merely viewed). The unencrypted Channel can be uploaded to a server outside of the Sling platform and retransmitted to any number of users that can receive the Channel without purchasing a legitimate subscription from Plaintiffs.

21.     Defendants' customers are able to receive Plaintiffs' Channels because the Widevine DRM used to protect the Channels from unauthorized access and copying is being circumvented as described above. Additional content provided on the Service is believed to be acquired from other legitimate pay-television providers that use the Widevine DRM through this process of circumvention, which enables the Service to offer thousands of channels and tens of thousands of

on-demand programs at a small fraction of the cost charged by legitimate providers that pay to license their content such as Plaintiffs.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of the DMCA, 17 U.S.C. § 1201(a)(2) asserted by Plaintiffs

22. Plaintiffs repeat and reallege the allegations in paragraphs 1-21.

23. Plaintiffs use DRM technology to effectively control access to Plaintiffs' Channels that include works protected under the Copyright Act. Plaintiffs are authorized by the copyright owners to control access to Plaintiffs' Channels and implement the DRM technology with their consent.

24. Plaintiffs' DRM technology is circumvented to gain access to Plaintiffs' Channels that are retransmitted without authorization to users of the Service. Upon information and belief, the circumvention targets Plaintiffs' Widevine DRM and represents an essential component or part of the Service.

25. The Service, or at least the component or part of the Service that involves gaining unauthorized access to Plaintiffs' Channels, is primarily designed and produced for the purpose of circumventing the DRM technology that Plaintiffs implement and has no commercially significant purpose or use other than circumventing such DRM technology.

26. Defendants violate 17 U.S.C. § 1201(a)(2) by manufacturing, offering to the public, providing, or otherwise trafficking in the Service. Each sale of the Service constitutes a separate violation of 17 U.S.C. § 1201(a)(2).

27. Defendants' actions violating 17 U.S.C. § 1201(a)(2) were performed without the authorization or consent of Plaintiffs or, upon information and belief, any owner of the copyrighted works provided by Plaintiffs.

28.     Defendants' violations of 17 U.S.C. § 1201(a)(2) were willful. Such violations have damaged Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(a)(2).

## COUNT II
## Violations of the DMCA, 17 U.S.C. § 1201(b)(1) asserted by Plaintiffs

29.     Plaintiffs repeat and reallege the allegations in paragraphs 1-21.

30.     Plaintiffs use DRM technology to effectively control copying of Plaintiffs' Channels that include works protected under the Copyright Act. Plaintiffs are authorized by the copyright owners to control copying of Plaintiffs' Channels, including distribution and public performance through acts of retransmission, and implement the DRM technology with their consent.

31.     Plaintiffs' Channels are retransmitted without authorization to users of the Service by circumventing Plaintiffs' DRM technology. Upon information and belief, the circumvention targets Plaintiffs' Widevine DRM and represents an essential component or part of the Service.

32.     The Service, or at least the component or part of the Service involving unauthorized retransmission of Plaintiffs' Channels to Service users, is primarily designed and produced for the purpose of circumventing the protection afforded by the DRM technology that Plaintiffs implement and has no commercially significant purpose or use other than circumventing such protection.

33.     Defendants violate 17 U.S.C. § 1201(b)(1) by manufacturing, offering to the public, providing, or otherwise trafficking in the Service. Each sale of the Service constitutes a separate violation of 17 U.S.C. § 1201(b)(1).

34. Defendants' actions violating 17 U.S.C. § 1201(b)(1) were performed without the authorization or consent of Plaintiffs or, upon information and belief, any owner of the copyrighted works provided by Plaintiffs.

35. Defendants' violations of 17 U.S.C. § 1201(b)(1) were willful. Such violations have damaged Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(b)(1).

## COUNT III
### Violations of the FCA, 47 U.S.C. § 605(e)(4), Asserted by DISH

36. Plaintiffs repeat and reallege the allegations in paragraphs 1-21.

37. Defendants sell and distribute Device Codes for the Service for purposes of divulging, using, and assisting others to receive the DISH Channels originating from DISH's satellite communications as part of the Rebroadcasting Scheme, in violation of 47 U.S.C. § 605(e)(4). Defendants intended Device Codes for the Service to be used in divulging and receiving the DISH Channels, without authorization from DISH and for the benefit of Defendants and users of the Service that were not entitled to receive the DISH Channels, which is activity proscribed by 47 U.S.C. § 605(a).

38. Defendants' violations of 47 U.S.C. § 605(e)(4) were willful and for purposes of commercial advantage and private financial gain.

39. Defendants were aware or had reason to believe that their actions violated 47 U.S.C. § 605(e)(4). Such violations caused damage to Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 47 U.S.C. § 605(e)(4).

## PRAYER FOR RELIEF

Plaintiffs request a judgment against Defendants as follows:

A. For a permanent injunction under Fed. R. Civ. P. 65, 47 U.S.C. § 605(e)(3)(B)(i),

and 17 U.S.C. § 1203(b)(1) that prohibits Defendants, and any officer, agent, servant, employee, or other person acting in active concert or participation with him that receives actual notice of the order, from manufacturing, offering to the public, providing, or otherwise trafficking in the Service, or any other technology, product, service, device, component, or part thereof that:

      1.      Receiving or assisting others in receiving DISH's satellite communications or the content of such communications without DISH's authorization, including through the Service or any similar internet streaming service;

      2.      Selling or distributing any device or equipment that is intended for receiving or assisting others in receiving DISH's satellite communications of television programming or the content of such communications, including codes or credits used to access the Service or any similar internet streaming service; and

      3.      Circumventing a DRM or any other technological protection measure that controls access to Plaintiffs' Programming, including through the use of Sling subscription accounts to provide Sling programming for the Service or any similar internet streaming service.

      B.      For an order transferring all domain names and websites that Defendants used in connection with the Service to Plaintiffs.

      C.      For an order awarding the greater of: (1) Plaintiffs' actual damages together with Defendants' profits that are attributable to the violations identified in Count I and Count II, or (2) statutory damages up to $2,500 for each violation identified in Count I or Court II, pursuant to 17 U.S.C. § 1203(c)(2) and (c)(3)(A);

      D.      For an order awarding DISH the greater of (1) its actual damages together with Defendants' profits that are attributable to the violations identified in Count III, or (2) statutory

damages up to $100,000 for each violation of 47 U.S.C. § 605(e)(4), pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II);

      E.      For an order awarding Plaintiffs their attorneys' fees and costs under 17 U.S.C. § 1203(b)(4)-(5);

      F.      For an accounting of all profits and other benefits that Defendants received from the wrongful conduct identified in this complaint;

      G.      For pre and post-judgment interest on all damages awarded by the Court, from the earliest date permitted by law at the maximum rate permitted by law; and

      H.      For such additional relief as the Court deems just and equitable.

Dated: November 9, 2023.                      Respectfully submitted,

                                                        /s/ Christopher P. Craven
                                                        By: s/ Christopher P. Craven
                                                        Christopher P. Craven (attorney in charge)
                                                        **HAGAN NOLL & BOYLE LLC**
                                                        Texas Bar #24009246
                                                        christopher.craven@hnbllc.com
                                                        Two Memorial City Plaza
                                                        820 Gessner, Suite 940
                                                        Houston, Texas 77024
                                                        Telephone: (713) 343-0478
                                                        Facsimile: (713) 758-0146

                                                        Attorneys for Plaintiffs DISH Network L.L.C.
                                                       and Sling TV L.L.C.