UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**DISH NETWORK, L.L.C., ET AL.,**

  Plaintiffs,

v.     No. 4:23-cv-01136-P

**JOHN GWAKA MAGEMBE, ET AL.,**

  Defendants.

## ORDER

Before the Court is Plaintiff's Motion for Default Judgment against Defendant John Gwaka Magembe. ECF No. 22. For the reasons stated below, Plaintiff's motion will be **GRANTED**.

## BACKGROUND

Plaintiffs DISH Network L.L.C. ("DISH") and Sling TV L.L.C. ("Sling,") filed this action against Defendant John Gwaka Magembe alleging violations of the Federal Communication Act ("FCA"), 47 U.S.C. § 605, and the Digital Millenium Copyright Act ("DMCA").

Defendant was properly served with a copy of Plaintiffs' complaint and respective summons in accordance with the Court's order authorizing alternative service. Service of process was completed on December 23, 2023. Plaintiffs filed their Request for Entry of Default on January 17, 2024, and the Clerk entered default against Defendant on January 18, 2024. Plaintiffs submitted evidence that Defendant is not an infant, incompetent, on active duty with the military or otherwise exempted under the Servicemembers' Civil Relief Act.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth the procedure for default judgments. If a defendant doesn't "plead or otherwise defend" against a claim, the Clerk must enter default upon a requisite showing from the plaintiff. *See* FED. R. CIV. P. 55(a). If a defendant no-showed

and damages are readily calculable, the Court may enter default judgment upon timely motion from the plaintiff without a hearing. *See id.* at 55(b). Still, "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (cleaned up).

Consistent with Fifth Circuit policy favoring judgments on the merits, default judgments are highly disfavored. *See Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). The default-judgment analysis is three-pronged. *First*, the Court asks if default judgment is procedurally proper.[1] *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). *Second*, the Court "assess[e]s the substantive merits of the plaintiff's claim and determine[s] whether there is a sufficient basis in the pleadings for the judgment." *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 498 (5th Cir. 2015) (noting default judgments "must be supported by well-pleaded allegations and must have a sufficient basis in the pleadings" (cleaned up)). *Third*, the Court determines what relief is proper. *See Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir. 2002). In doing so, the Court assumes the plaintiff's uncontested allegations are true, except those regarding damages. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

## ANALYSIS

The Court must first determine whether default is procedurally warranted. In doing so, the Court considers whether: (1) there is an issue of material fact; (2) substantial prejudice is present; (3) proper grounds for default are clearly established; (4) the defaulting party made a good faith mistake or committed excusable neglect; (5) default judgment

---

[1] The Court answers this question with an eye toward six considerations: "(1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the Court would think itself obliged to set aside the default on the defendant's motion." *Lindsey,* 161 F.3d at 893.

would be a harsh remedial measure; and (6) the Court would feel obligated to set aside default upon a defendant's motion. *See Davis v. Parkhill-Goodloe Co., Inc.*, 302 F.2d 489, 495 (5th Cir. 1962).

*First*, Plaintiffs filed a well-pleaded complaint alleging facts that raise a right to relief. They have. *See* ECF No. 1.

*Second,* Defendants' failure to defend the claims against them has brought the adversarial process to a halt, causing substantial prejudice to Plaintiffs. Defendant has had the opportunity to defend the claims against him and has chosen not to do so. There is no substantial prejudice present.

*Third*, Defendants' failure to participate in this litigation establishes the requisite grounds for default.

*Fourth,* there is no reason to believe Defendants are acting under a good-faith mistake or excusable neglect.

*Fifth*, a default judgment is not harsh because it is the exact procedural device that is necessary for the Court to maintain the efficiency of its docket. *See Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999) (explaining the policy in favor of resolving cases on their merits is "counterbalanced by considerations of social goals, justice and expediency, a weighing process that lies largely within the domain of the trial judge's discretion"); *see also Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) ("The purpose behind default judgments . . . is to allow district courts to manage their dockets efficiently and effectively."). Plaintiff properly served Defendant, Defendant has chosen not to participate in the litigation, and Defendant is in default. Such circumstances warrant default judgment under Rule 55(b)(2).

*Sixth*, nothing in the record suggests that the Court would set aside its putative default against Defendant if he was to move for such relief. Based on these factors, the Court concludes that a default judgment is procedurally warranted.

\*                               \*                               \*

As a result of Defendant's default, the Court accepts as true the following well-pleaded allegations from Plaintiffs' complaint:

(a) Plaintiffs deliver television channels to millions of authorized, fee-paying subscribers nationwide using a direct broadcast satellite system and the internet ("Channels"). ECF No. 1 at 2. The Channels are protected from unauthorized access and copying using a conditional access system (in the case of satellite communications of the Channels) and digital rights management ("DRM") technology (in the case of internet communications of the Channels). *Id.*

(b) Defendant is trafficking in the Beast TV internet streaming television service a/k/a Channels4Cheap ("Service") through his websites that include www.channels4cheap.com ("C4C Website"). ECF No. 1 at 3. Defendant controls access to the Service through the sale of codes that are designed and produced to enable a set-top box or other internet-enabled device to access servers used to retransmit Plaintiffs' Channels on the Service (a "Device Code"). ECF No. 1 at 3–4. Defendant sells the Service on the C4C Website for $2 for a forty-eight-hour trial; $15 for one month; $40 for three months; $70 for six months; and $120 for twelve months. *Id.* Defendant advertises that the Service provides more than 4,000 live channels, including professional sports packages and pay-per-view events. ECF No. 1 at 3–4.

(c) Plaintiffs' Channels are retransmitted without authorization to users that purchase the Service from Defendant. ECF No. 1 at 6. Identifiers unique to Plaintiffs' satellite and internet communications of the Channels were detected when conducting a technical analysis of the corresponding channels on the Service, thereby confirming that channels retransmitted on the Service originated from Plaintiffs. *Id.*

(d) The process of acquiring channels for the Service is an essential component or part of the Service because without programming content there would be no Service. ECF No. 1 at 7. Plaintiffs' Channels are accessed and retransmitted to users of the Service by circumventing Plaintiffs' DRM technology and its corresponding protections. *Id.*

(e) Accordingly, the Service, or at least the components or parts of the Service that involve accessing and retransmitting Plaintiffs' Channels to users of the Service, is primarily designed and produced for the purpose of circumventing the DRM technology implemented by Plaintiffs and the protections afforded by such technology and has no other commercially significant purpose or use. *Id.*

(f) Defendant violated 17 U.S.C. §§ 1201(a)(2), 1201(b)(1) of the DMCA because he "offer[s] to the public, provide[s], and otherwise traffic[s] in" the Service. ECF No. 1 at 8. Each sale of the Service constitutes a separate violation of 17 U.S.C. §§ 1201(a)(2), 1201(b)(1). *Id.* Defendants' violations of the DMCA were willful. ECF No. 1 at 9.

(g) Defendant's Device Codes are also intended for use in activity prohibited under 47 U.S.C. § 605(a) of the FCA. ECF No. 1 at 10. The Devices Codes assist users of the Service to receive Channels that originated from DISH's satellite communications without authorization from DISH, which benefited Defendant in the form of Device Code revenues and benefitted his Service users by allowing them to avoid paying the required subscription fee to DISH. *Id.* By selling the Device Codes required to access the Service, Defendant violated 47 U.S.C. § 605(e)(4) of the FCA. ECF No. 1 at 10. Defendants' violations of 47 U.S.C. § 605(e)(4) were willful and for purposes of commercial advantage and private financial gain. *Id.*

The FCA authorizes statutory damages for Defendant's violations of Section 605(e)(4) in the amount of $10,000 to $100,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II), (ii). The DMCA authorizes statutory damages for each of Defendant's violations of section 1201(a)(2) or 1201(b)(1) "in the sum of not less than $200 or more than $2,500." 17 U.S.C. § 1203(c)(3)(A). Defendant violated the FCA and DMCA each time that he distributed a Device Code that provided access to the Service. See 47 U.S.C. § 605(e)(4) ("[T]he prohibited activity established herein as it applies to each such device shall be deemed a separate violation."); 17 U.S.C. § 1203(c)(3)(A) (authorizing statutory damages "per act of circumvention, device, product, component, offer, or performance of service").

Plaintiffs requested statutory damages of $2,500 for each instance in which Defendant distributed a Device Code and the corresponding Service, which is appropriate under the FCA and DMCA.

The damages requested by Plaintiffs are substantially less than statutory damages awarded in similar cases under the FCA and are reasonable considering Defendant's misconduct.

Plaintiffs submitted evidence that Defendant sold at least 12,022 Device Codes and the corresponding Service, refused to comply with cease-and-desist demands, and continued trafficking in the infringing Service and Device Codes even after suit was filed. Plaintiffs also submitted evidence from Defendant's mother, co-Defendant Joyce Berry, that Defendant was not authorized to use her accounts to traffic in thousands of sales of Device Codes and the Service that were reflected in those accounts. Those sales of Device Codes and the Service and the thousands shown in Defendant's girlfriend Liliana Reyes' accounts are not included in the calculation of sales by Defendant.

Upon an analysis of the six factors laid out in *Lindsey* the Court determines that default is procedurally proper and that there is sufficient basis in the pleadings for the judgment. Lastly, the Court determines that the relief sought by the Plaintiffs is proper.

Accordingly, the Court **ORDERS** as follows:

Defendant, and any person acting in active concert or participation with him that receives notice of this order, are hereby **PERMANENTLY ENJOINED** from:

a. Receiving or assisting others in receiving DISH's satellite communications or the content of such communications without authorization from Plaintiffs, including through the Service or any similar internet streaming service;

b. Selling or distributing any device or equipment that is intended for receiving or assisting others in receiving DISH's satellite communications of television programming or the content of such communications, including codes or credits used to access the Service or any similar internet streaming service;

    c. Circumventing a DRM or any other technological protection measure that controls access to Plaintiffs' programming, including through the use of Sling subscription accounts to provide Sling programming for the Service or any similar internet streaming service;

    d. Trafficking in the Service or any similar service that involves the circumvention of Plaintiffs' DRM or other technological protection measure.

Further, judgment is entered in favor of Plaintiffs on Counts I-III of the complaint alleging Defendant's violations of 17 U.S.C. §§ 1201(a)(2), 1201(b)(1), and 47 U.S.C. § 605(e)(4) respectively. Plaintiffs are awarded $30,055,000 in statutory damages against Defendant for Defendant's violations of sections 1201(a)(2) and 1201(b)(1) in accordance with 17 U.S.C. § 1203(c)(3)(A) of the DMCA.

The Court retains jurisdiction over this action for purposes of enforcing the judgment and permanent injunction.

**SO ORDERED** on this **26th day of April 2024.**

_____
Mark T. Pittman
UNITED STATED DISTRICT JUDGE